NOT FOR PUBLICATION                                                      CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HAROLD ANDERSON, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil Case No. 11-3394 (FSH) (PS) |
| v. | **AMENDED OPINION & ORDER** |
| THERMO FISHER SCIENTIFIC, | Date: March 25, 2013 |
| Defendant. |  |

**HOCHBERG, District Judge:**

Plaintiff Harold Anderson brought this action against Defendant Thermo Fisher Scientific asserting claims under the New Jersey Law Against Discrimination ("NJLAD") for race discrimination, hostile work environment, retaliation, and wrongful termination, and a common law claim for intentional infliction of emotional distress. Defendant moved for summary judgment in its favor, which Plaintiff opposed.[1]  The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Fed. R. Civ. P. 78.

---

[1] Defendant sought to supplement its motion for summary judgment with argument regarding the election of remedies defense applicable to cases alleging NJLAD violations where plaintiff had already sought an administrative remedy with the New Jersey Division of Civil Rights ("NJDCR"). Subsequently, this Court issued an Order pursuant to Fed. R. Civ. P. 56(f) instructing Plaintiff to show cause why summary judgment should not be granted pursuant to the election of remedies provision of NJLAD.  Both parties filed submissions in response to this Court's Order.

   The Court will not address the election of remedies defense in this opinion. Defendant did not raise the affirmative defense in its answer, but raised it for the first time at the final pretrial conference after summary judgment briefing had concluded. This was untimely; counsel should have raised this long-established defense in its answer for it to be considered.  Moreover, there are issues of fact relating to the defense which were never explored during discovery

I.   **FACTS**[2]

   1. Plaintiff's Termination

Plaintiff Harold Anderson is an African-American man who was employed with Thermo Fisher Scientific from approximately January 1997 until September 10, 2010, when he was terminated, purportedly due to his behavior during a workplace incident on August 4, 2010.  On that date, Plaintiff and his coworker Andrew Scalzo both exchanged allegedly threatening remarks regarding a recent shooting in Connecticut by a disgruntled warehouse employee.  Andrew Scalzo verbally counseled Plaintiff for driving a fork truck through a stop sign in the warehouse. (DF ¶¶ 21-22; PRF ¶¶ 21-22.)  Scalzo had previously expressed concerns to Plaintiff about his failure to fully stop at stop signs.  (*Id.*)  Plaintiff responded to Scalzo by referencing the news story about an incident that occurred the day before in Connecticut where a warehouse employee shot and killed nine people and himself at his workplace.  Scalzo responded that he saw the incident on the news the previous night and remarked that the man had "snapped" or "flipped out." (PAF ¶ 29; DF ¶¶ 25-26.)  Plaintiff then drove off on the fork truck.  (PAF ¶ 29; DF ¶ 29.)  Scalzo then turned to a coworker and asked whether Plaintiff's statement was a threat.  Plaintiff then returned and suggested to Scalzo that perhaps someone was harassing that

---

because the defense was untimely raised, such as whether Plaintiff received notice of the consequences of filing administrative charges with the NJDCR, and whether Plaintiff received any correspondence from the NJDCR including the final determination letter. However, even if Defendant had timely raised this defense, and even if the issues of fact relating to the defense were resolved in Plaintiff's favor such that the defense would not bar this complaint, summary judgment is still warranted on the merits of Plaintiff's claims, as explained in this opinion.

[2] These facts are stated in the parties' 56.1 statements. DF refers to Defendant's Statement of Facts, PRF refers to Plaintiff's Responding Statement to Defendant's Statement of Facts, PAF refers to Plaintiff's Additional Statement of Facts, DRRF refers to Defendant's Reply to Plaintiff's Responding Statement to Defendant's Statement of Facts, and DRAF refers to Defendant's Response to Plaintiff's Additional Statement of Facts.

Connecticut warehouse employee, to which Scalzo responded that anyone can "snap" or "flip out" including managers, and Plaintiff again drove away. (PAF ¶¶ 29, 31; DF ¶¶ 27-29.)

Scalzo reported Plaintiff's comments to Human Resources. As Scalzo was on his way back from Human Resources, Plaintiff approached Scalzo again and asked if Scalzo thought Plaintiff had threatened him, to which Scalzo said yes, and Plaintiff apologized and indicated that he felt threatened by Scalzo's statements as well.  (DF ¶¶ 40-42; PRF ¶¶ 40-42; PAF ¶ 43.) A Human Resources employee who was present broke up the conversation because she felt that Plaintiff's voice was raised and it made her uncomfortable. (DF ¶ 43; PRF ¶ 43; PAF ¶¶ 45-46.) Both Scalzo and Plaintiff were suspended, and following an investigation were terminated for engaging in inappropriate and threatening conduct, which violated Defendant's Code of Conduct and the Collective Bargaining Agreement. (DF ¶¶ 77-82; PAF ¶ 142; PRF ¶ 82.) At the time of the termination, Scalzo was 61 years old, and Plaintiff was 54 years old and had been employed by Defendant for over thirteen years. (DF ¶¶ 1, 14; PRF ¶¶ 1, 14.)  Sheryl Folk was placed in Plaintiff's position following his termination; she is an African American female who is approximately seven years younger than Plaintiff. (PAF ¶ 10; DRAF ¶ 10.)

    2.   <u>Other Instances of Alleged Discrimination</u>

Plaintiff lists various facts and incidents of allegedly discriminatory conduct to support his assertion that Defendant had a motive or intent to discriminate, and to show that there was a hostile work environment at Thermo Fisher. Some of these incidents[3] are:

---

[3] Plaintiff's proffered list of other instances of racial discrimination at Thermo Fisher does not identify the time period during which these incidents occurred.  Defendant identifies that two of the employees that are referenced in many of the incidents left Defendant's employ in 2003 and 2006. The statute of limitations for NJLAD claims is 2 years. Plaintiff argues that the continuing violations doctrine applies, but as explained below, the doctrine does not apply here because Plaintiff has not shown that the discrimination at Thermo Fisher was consistent or persistent. Thus, omitted from this list are those alleged incidents that are definitively outside the limitations

- At the time of Plaintiff's termination, there was only one African American manager out of 18 management positions. (PAF ¶ 233.)

- Other African American employees have filed complaints against Defendant with the EEOC for harassment and in court for racial discrimination and retaliation under NJLAD. (PAF ¶¶ 231-32, 236.)

- When Plaintiff sustained a right hand injury at work and was sent to a medical facility for treatment, the Safety Coordinator requested that the doctor perform a drug/alcohol test on Plaintiff. (PAF ¶ 249(k).)[4]

Defendant maintains an anti-harassment policy, which prohibits verbal or physical harassment on the basis of race, color, gender, age, religion, national or ethnic origin, disability or sexual orientation. Employees could make complaints through their Union, through Human Resources, or through an Ethics Hotline that Defendant established for employees to report concerns involving harassment. While Plaintiff did file grievances during his employment at Thermo Fisher, there are no records of any grievances filed to report discrimination, harassment, or retaliation from the period of employment before his suspension. (DF ¶¶ 4-8, 158-59, 161-62; PRF ¶¶ 4-8, 158-59, 161-62.)

II.   **LEGAL STANDARD**

---

period, because they involve those two employees identified by Defendant who were no longer employed during the limitations period, or because Plaintiff testified to the timing of the incident and it falls beyond the limitations period.  Furthermore, the Court will disregard those incidents for which Plaintiff cites to unsworn discovery responses as supporting "evidence" in its brief and 56.1 statement. Fed. R. Civ. P. 33(b)(3).

[4] However, Plaintiff testified during his deposition that he is not aware of Caucasian employees who had an accident, were referred to the medical facility, and were not required to undergo a drug and alcohol test. (DF ¶ 143; PRF ¶ 143.)

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some

metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

III.  **DISCUSSION**

  A. **Race and Age Discrimination**

Analysis of a discrimination claim under NJLAD involves the same burden-shifting analysis as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1139 (N.J. 2005). At step one, plaintiff must establish a *prima facie* case through the following four elements: 1) plaintiff was a member of a protected group; 2) plaintiff's job performance met the employer's legitimate expectations; 3) plaintiff suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Davis v. City of Newark*, 285 Fed. Appx. 899, 903 (3d Cir. 2008); *Ahmed v. Interstate Management Co.*, No. 11-683, 2012 WL 3038523, at *5 (D.N.J. July 25, 2012). In an age discrimination claim, the fourth prong "requires a showing that the plaintiff was replaced by a candidate sufficiently younger than he to permit an inference of age discrimination." *Carthan v. Alliance, Div. of Rock-Tenn Co.*, No. 05-4470, 2007 WL 316464, at *4 (D.N.J. January 29, 2007) (citing *Young v. Hobart West Group*, 285 N.J. Super. 448, 458 (App. Div. 2005)).

Once the plaintiff makes a *prima facie* case of discrimination, the burden shifts to the defendant who must provide a legitimate, non-discriminatory reason for the termination. If the

defendant does so, to succeed the plaintiff must then show that the defendant's reasons are a pretext for unlawful discrimination and that the defendant was motivated by discriminatory intent. *Zive*, 867 A.2d at 1140 ("To prove pretext, a plaintiff may not simply show that the employer's reason was false but must also demonstrate that the employer was motivated by discriminatory intent."); *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.").

Defendant does not challenge the first three elements of Plaintiff's *prima facie* case, but challenges the fourth.

1. Age Discrimination

With respect to Plaintiff's age discrimination claim, Plaintiff cannot establish a *prima facie* case because the person that took his position following his termination was only 7 years younger than Plaintiff, which is insufficient to support an inference of age discrimination. *See Robinson v. Philadelphia*, No. 11-3852, 2012 WL 2866617, at *3 n.1 (3d Cir. July 13, 2012) (noting that age differences of less than ten years are not significant enough to establish age discrimination); *Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 333 n.9 (3d Cir. 2000) (noting that age difference of seven years was insufficient to create inference of discrimination).

Even if Plaintiff had sustained a *prima facie* case of age discrimination, no reasonable jury could find that Defendant lacked a legitimate, nondiscriminatory reason for Plaintiff's termination or that Defendant's proffered reason was pretextual. Defendant's nondiscriminatory reason for Plaintiff's termination was that Plaintiff's behavior during the August 4th incident was

7

threatening and violated Defendant's Code of Conduct and Collective Bargaining Agreement. Plaintiff's attempt to establish that this reason was a pretext for age discrimination fails. He asserts that those who were involved in his termination decision were younger than he, but this assertion is irrelevant and does not show discriminatory intent. Finally, his allegations that other employees were similarly terminated due to their age are mere assertions and are not supported by factual evidence, and thus cannot defeat summary judgment. *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 228 (3d Cir. 2009); *Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005) (explaining that speculation and conjecture may not defeat a motion for summary judgment).

    2. Race Discrimination

Similarly, Plaintiff has not established a *prima facie* case of race discrimination, as he fails to show that his termination occurred under circumstances giving rise to an inference of discrimination. As a result of the August 4th incident, both Plaintiff and his Caucasian manager, Andrew Scalzo, were terminated. The circumstances surrounding Plaintiff's termination include Plaintiff and Scalzo exchanging allegedly threatening remarks regarding a recent warehouse shooting carried out by a disgruntled employee, Defendant engaging in an investigation surrounding the incident, suspension of both employees, and the ultimate termination of both employees after it was determined that both engaged in threatening conduct that violated the Code of Conduct and Collective Bargaining Agreement. These circumstances surrounding Plaintiff's termination do not give rise to an inference of discrimination.

  B. **Hostile Work Environment**

To establish a *prima facie* claim of hostile work environment under the NJLAD, the plaintiff must show that "the complained-of conduct (1) would not have occurred but for the

employee's [protected characteristic]; and it was (2) severe or pervasive enough to make a (3) reasonable [person in plaintiff's protected class] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 114 (3d Cir. 1999) (citing *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993)).

Viewed in the light most favorable to Plaintiff, the record shows that Plaintiff worked for Defendant for over 13 years and that there were incidents during that time period that Plaintiff now claims show racial discrimination at Thermo Fisher. However, Defendant had in place anti-discrimination policies and mechanisms for grievances, which Plaintiff did not utilize to complain of discriminatory conduct.

The record does not provide a sufficient basis upon which a reasonable jury could find Defendant liable to Plaintiff for his hostile work environment claim because: 1) many of the alleged incidents are time-barred and thus not actionable, and Plaintiff has not proffered facts to establish that the continuing violation exception to the statute of limitations applies; 2) the alleged conduct is insufficiently severe or pervasive; and 3) Defendant has established that it had anti-discrimination policies in place that it maintained and advertised.

1. Time-Barred Complaints

The statute of limitations for hostile work environment claims under the NJLAD is two years. *See Helmi v. New Jersey Transit Rail Corp.*, No. L-2398-06, 2010 WL 4861443, at *4 (N.J. Super. Ct. App. Div. Dec. 1, 2010) (citing *Montells v. Haynes*, 133 N.J. 282, 292 (1993)). The bulk of Plaintiff's complaints supporting his hostile work environment claim, namely those incidents involving George Cronk (who stopped working at Thermo Fisher in 2006) and Brian

9

Culver (who stopped working at Thermo Fisher in 2003) concern incidents predating the limitations period.  Thus, thus the ability to bring claims based on these incidents has lapsed.[5]

Plaintiff argues that these complaints are admissible under the continuing violations theory. The continuing violations theory allows a claim to proceed if one of a "series of acts, which together created the hostile work environment" occurred within the statutory period.  *Id.* Here, Plaintiff makes allegations of isolated incidents, but fails to proffer facts to show a relationship between the alleged conduct that occurred before the statute of limitations expired and that which occurred within the statutory period.  Plaintiff has not shown that discrimination at Thermo Fisher was consistent or persistent during his employment there.  *See id.* at *5 (finding no continuing violation where plaintiff was unable to show the incidents were "consistent, persistent, or unrelenting throughout this time" but rather were "isolated and infrequent"). Therefore, those incidents that Plaintiff uses to support his claim for hostile work environment and that involve Cronk and Culver will not be considered as they fall outside of the limitations period.[6]  While the remaining events may also be outside of the limitations period, Plaintiff has not provided dates of these incidents.  Thus, viewing the facts in the light most favorable to the non-movant, the Court will only consider these undated incidents.

    2.  <u>Severity or Pervasiveness</u>

When evaluating the severity or pervasiveness requirement of a hostile work environment claim, a court examines all the circumstances such as "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Caver v. City of*

---

[5] *See* note 3, *supra*.

[6] Plaintiff also claims that in 2000, Scalzo denied Plaintiff's request for overtime pay and then stated to a coworker, "They'll never get work down here." The court will not consider this alleged incident because it falls outside of the limitations period.

*Trenton*, 420 F.3d 243 (3d Cir. 2005) (citation omitted); *see also Ahmed*, 2012 WL 3038523, at *16-17. The conduct itself is what must be severe or pervasive, not the impact on the plaintiff or the work atmosphere. *Lehmann*, 626 A.2d at 455.

The incidents to be considered for the hostile environment claim that are not definitely time-barred include allegations that: there was only one African American manager out of 18 management positions at the time of Plaintiff's termination; other complaints of harassment and racial discrimination have been filed against Defendant; and Plaintiff was subjected to a drug/alcohol test after sustaining an injury at work while he was not aware of Caucasians being subjected to the same. Viewing these allegations in the light most favorable to the Plaintiff, and even assuming arguendo that they are admissible evidence for the purposes of this motion, these incidents are not so severe or pervasive that a reasonable jury could find a hostile work environment claim.

        3. <u>Anti-Discrimination Policies</u>

Defendant had effective preventive and remedial measures in place to address complaints of discrimination, which weighs against a finding of liability. Although the mere presence of anti-harassment policies does not prove an absence of negligence, "effective preventative mechanisms" demonstrate "some evidence of due care" by the employer. *Lehmann,* 626 A.2d at 463. A company will be less apt to be liable for a hostile work environment claim if it has "policies reflecting a lack of tolerance for harassment" such as "periodic publication to workers of its anti-harassment policy; an effective and practical grievance process; and training sessions for workers, supervisors, and managers about how to recognize and eradicate unlawful harassment." *Cavuoti v. New Jersey Transit Corp.*, 735 A.2d 548, 556 (N.J. 1999).

Here, Defendant had a policy against discrimination and harassment, and had grievance mechanisms in place of which Plaintiff was aware. Although Plaintiff alleges that there were instances of discrimination at Thermo Fisher during his employment, he did not report them or file grievances about them. Thus, Defendant did not know about these instances and could not take action. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998) (holding an employer should not be held responsible when its employee "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer"). As Defendant had effective anti-harassment policies in place and mechanisms to deal with complaints of harassment and discrimination, a reasonable jury could not find Defendant liable on a hostile work environment claim based on allegedly discriminatory acts that Plaintiff did not report.

C.  **Retaliation**

Plaintiff claims that he was retaliated against for discrimination complaints he filed internally at Thermo Fisher and with the EEOC following his suspension, which Defendant received on approximately August 16, 2010. To establish a claim for retaliation, Plaintiff must establish the existence of a *prima facie* case by showing: 1) he engaged in a protected activity; 2) he was thereafter subjected to an adverse employment decision by the defendant; and 3) there was a causal link between the two. *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 560 (1990). If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for the employment action. *Jamison v. Rockaway Twp. Bd. of Educ.*, 242 N.J. Super. 436, 445 (App. Div. 1990).

While Plaintiff did engage in protected activity by filing discrimination complaints and was terminated thereafter, Plaintiff has not proffered facts sufficient to show a causal connection between the discrimination complaints he made and his termination. Although Plaintiff was

officially terminated a few weeks after his discrimination complaints, and "in certain narrow circumstances, an unusually suggestive proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection," the case here does not provide those narrow circumstances. *Gladysiewski v. Allegheny Energy*, 398 Fed. Appx. 721, 724 (3d Cir. 2010); *Young v. Hobart West Group*, 385 N.J. Super. 448, 467 (App. Div. 2005) (explaining that temporal proximity between the protected activity and the adverse employment action will usually be insufficient to establish the causal link, and that where the timing alone is not unusually suggestive, plaintiff must set forth other evidence to establish the casual link). When Plaintiff lodged his complaints against Thermo Fisher, he had already been suspended with an investigation pending surrounding the August 4th incident. Moreover, the individual who ultimately decided to terminate Plaintiff, Douglas Beaton, had no knowledge of the EEOC charge when he made the decision to terminate, and Plaintiff has offered no evidence showing that Beaton knew of the internal complaint. (DF ¶ 175.) Therefore, Plaintiff has not established a *prima facie* case of retaliation.

### D. **Intentional Infliction of Emotional Distress**

Plaintiff also alleges a claim for intentional infliction of emotional distress ("IIED"). Common law claims, such as IIED, that are based on the same facts as NJLAD claims, should be dismissed. *See Valentine v. Bank of Am.,* No. 09–262, 2010 WL 421087, at *6 (D.N.J. Feb. 1, 2010) (holding that because plaintiff's common law intentional infliction of emotional distress claim "is based on the same facts as her claims under the LAD," "her LAD claims preempt her common law claim"); *Quarles v. Lowe's Home Ctrs., Inc*., No.04–5746, 2006 WL 1098050, at *4 (D.N.J. Mar. 31, 2006) (dismissing common law intentional infliction of emotional distress claim because it "is based on the same allegations supporting Plaintiff's LAD claim"). Here,

Plaintiff's IIED claim is based on the same facts as his NJLAD claims, as he alleges that "Defendant's racially offensive comments and conduct directed at the Plaintiff," as discussed in his claim for race discrimination, "satisfies the intentional and outrageous component of an [IIED] claim." (Plaintiff's Opposition Brief at 34). Plaintiff's IIED claim is dismissed.[7]

## IV. CONCLUSION & ORDER

For the reasons stated above;

**IT IS** on this 25th day of March, 2013,

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED,** and it is further

**ORDERED** that this case is **CLOSED**.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.

---

[7] Even if Plaintiff's IIED claim was not based on the same facts as his NJLAD claims, Plaintiff has not established a *prima facie* case for IIED. To establish a *prima facie* case for IIED, Plaintiff must show that Defendant: "(1) engaged in intentional conduct (2) that was extreme and outrageous (3) and was the proximate cause (4) of severe distress suffered by the plaintiff." *Quarles*, 2006 WL 1098050, at *4; *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988). Courts have recognized the difficulty of establishing such a claim in an employment related dispute. *King v. Port Auth. of New York and New Jersey*, 909 F.Supp. 938, 943 (D.N.J. 1995) ("'[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.'") (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988)); *Lemke v. International Total Services, Inc.*, 56 F.Supp.2d 472 (D.N.J. 1999) ("Even terminations based on discrimination, without accompanying harassment or something akin thereto, do not state a cause of action for the intentional infliction of emotional distress."). In his opposition to summary judgment, Plaintiff has provided no evidence of his own severe distress allegedly caused by Defendant's conduct. For this reason alone, Plaintiff's IIED claim fails.